## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BRAYDEN JOHNSON, LOGAN
RHINES, and KAYLA SAVAGE,
individually, and on behalf of all others
similarly situated,

                *Plaintiffs*,

    v.

THE UNIVERSITY OF OKLAHOMA, *et al.*,

                *Defendants*.

Case No. 5:24-cv-00495-PRW

## BRIEF OF CIVIL RIGHTS AMICI CURIAE ACLU OK AND LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW

    Amici Curiae American Civil Liberties Union of Oklahoma Foundation (ACLU OK) and Lawyers' Committee for Civil Rights Under Law submit this amicus brief in support of Defendants' University of Oklahoma, *et al.*, Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF AMICI ........................................................................1

INTRODUCTION ........................................................................................................2

STANDARD OF REVIEW ...........................................................................................7

SUMMARY OF ARGUMENT.......................................................................................9

ARGUMENT................................................................................................................10

  I.   Plaintiffs Fail to Sufficiently State a Plausible Claim of Racial Discrimination and Their Claims Should be Dismissed....................................................................10

    A.   Strict Scrutiny Does Not Apply Because Plaintiffs Do Not Sufficiently Allege Any Facts Supporting the Use of Racial Classifications by OU in Making Financial Aid Decisions ...............................................................................11

    B.   Plaintiffs Have Failed to Sufficiently Allege Facts Supporting Intentional Discrimination under *Arlington Heights* ...............................................................15

CONCLUSION ............................................................................................................19

**CASES**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ....................................................9

*Anupama Bekkem v. Wilkie*, 915 F.3d 1258 (10th Cir. 2019) ............................9

*Ashaheed v. Currington*, 7 F.4th 1236 (10th Cir. 2021)............................11, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................... *passim*

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)..................................16, 19

*Black Emergency Response Team, et al. v. Drummond*, No. 5:21-CV-1022-G (W.D.

    Okla. Nov. 9, 2021) .....................................................................................1, 2

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272 (10th Cir. 2021)..................8

*Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011).........................................17

*Coalition for TJ v. Fairfax County School Board*, 68 F.4th 864 (4th Cir. 2023) ..........9, 14

*Colorado Christian University v. Weaver*, 534 F.3d 1245 (10th Cir. 2008) ....................13

*Dennis v. Watco Cos., Inc.,* 631 F.3d 1303 (10th Cir. 2011)............................19

*Fisher v. University of Texas at Austin*, 570 U.S. 297 (2013)............................2

*Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016)......................2, 17

*Grutter v. Bollinger*, 539 U.S. 306 (2003).........................................................9

*Hunt v. Cromartie*, 526 U.S. 541 (1999) .........................................................11

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011)......................8, 16

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ........................8, 19

*McLaurin v. Oklahoma State Regents for Higher Education*, 339 U.S. 637 (1950) ..........4

*Navajo Nation v. State of New Mexico*, 975 F.2d 741 (10th Cir. 1992) .....................15, 17

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ...................13

*Plessy v. Ferguson*, 163 U.S. 537 (1896) ...........................................................................3

*Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018) .......................................................11

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007) ........................8

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)....................................................8, 9

*SECSYS v. Vigil*, 666 F.3d 678 (10th Cir. 2012) ..............................................................15

*Sipuel v. Board of Regents of University of Oklahoma*, 332 U.S. 631 (1948) ...................4

*Students for Fair Admissions v. University of Texas at Austin*, No. 1:20-CV-763-RP

    (W.D. Tex. July 15, 2024)...........................................................................................2

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S.

    181 (2023) .................................................................................................. *passim*

*Texas Department of Housing & Community Affairs v. Inclusive Communities Project,*

    *Inc.*, 576 U.S. 519 (2015) .........................................................................................17

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252

    (1977) ...................................................................................................... *passim*

*Washington v. Davis*, 426 U.S. 229 (1976) .......................................................................9

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) .......................................................................10

**STATUTES**

Oklahoma Statutes Title 70, § 24-157(A)(1) .......................................................................6

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ...............................................................2

Federal Rule of Civil Procedure 12(b)(6) ......................................................2, 7, 9, 19

**REGULATIONS**

Oklahoma Executive Order 2023-31 (Dec. 13, 2023) ...........................................6

**CONSTITUTIONAL PROVISIONS**

Oklahoma Constitution Article 2, § 36A ...........................................................7

## IDENTITY AND INTEREST OF AMICI

The American Civil Liberties Union of Oklahoma Foundation ("ACLU OK") is a non-partisan, non-profit organization with 2,025 current members dedicated to the principles of liberty and equality embodied in the U.S. and Oklahoma Constitutions. Throughout its sixty-year history, ACLU OK has advocated in courts and legislatures against discrimination in all its forms, including bringing its own lawsuit against Defendants in this case. *See* ECF 50, *Black Emergency Response Team, et al. v. Drummond*, No. 5:21-CV-1022-G (W.D. Okla. Nov. 9, 2021) (challenging the University of Oklahoma's implementation of H.B. 1775 (70 O.S. § 24-157)). Because ACLU OK is dedicated to preventing discrimination, it has a special interest in ensuring that Defendants do not endure frivolous claims of discrimination based on misunderstandings of the law, like those brought by Plaintiffs in this case.

The Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") is a nonprofit civil rights organization founded in 1963 to secure equal justice for all through the rule of law, targeting, in particular, the inequities confronting Black Americans and other people of color. The Lawyers' Committee uses legal advocacy to achieve racial justice, fighting inside and outside the courts to ensure that Black people and other people of color have voice, opportunity, and power to make the promises of our democracy real. The Educational Opportunities Project (EOP) at the Lawyers' Committee has been a national leader in protecting and defending diversity efforts on college and university campuses for many years. The Lawyers' Committee represented

intervenor and amici students and presented oral argument before the Supreme Court in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023). Additionally, the Lawyers' Committee filed amicus briefs in *Fisher v. University of Texas at Austin*, 570 U.S. 297 (2013) (*Fisher I*) and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016) (*Fisher II*).

Most recently, the Lawyers' Committee serves as co-counsel representing plaintiffs in *Black Emergency Response Team, et al. v. Drummond*, No. 5:21-CV-1022-G (W.D. Okla. Nov. 9, 2021), challenging a state statute that, in part, seeks to eliminate a mandatory diversity course at the University of Oklahoma. In addition, the Lawyers' Committee represented intervenor students and organizations who successfully moved to dismiss a case challenging a college admissions program in *Students for Fair Admissions v. University of Texas at Austin*, No. 1:20-CV-763-RP (W.D. Tex. July 15, 2024).

## INTRODUCTION

This Court should dismiss Plaintiffs' lawsuit because they fail to sufficiently state a plausible claim of racial discrimination under Federal Rule of Civil Procedure 12(b)(6).[1] To adequately plead a claim of racial discrimination under Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause, Plaintiffs must sufficiently allege intentional discrimination based on either a facially discriminatory policy or under the *Arlington Heights* factors. Plaintiffs have alleged neither. As discussed further below,

---

[1] Although amici do not specifically address the Rule 12(b)(1) arguments of Defendants, they agree with Defendants that Plaintiffs do not have standing to pursue their claims.

Plaintiffs' complaint is laden with conclusory allegations that have nothing to do with Defendant University of Oklahoma's ("OU") financial aid programs and therefore cannot support a valid claim of discrimination. At its core, Plaintiffs' lawsuit boils down to a claim based on broad allegations: that OU provided, on average, some unspecified larger amount of financial aid to Black students than White students over a period of time that predated Plaintiffs' admission. Their Complaint must be dismissed.

Before addressing the merits, or lack thereof, of Plaintiffs' claims, it is worth noting briefly Oklahoma's and OU's contentious background with race relations. Plaintiffs paint a seemingly rosy picture for Black students attending OU because of the campus's efforts to support students through non-exclusionary, Black-centered events, *see, e.g.*, Compl. ¶¶ 28-32. But the reality is that Black students at OU have to contend with a long history of racial discrimination by OU and Oklahoma that still infects their daily experiences on OU's campus today.

In the late 1800s, even before Oklahoma became a state, counties in the Oklahoma Territory had the option of segregating students in schools, and nearly all counties voted to segregate.[2] After the Supreme Court's 1896 ruling in *Plessy v. Ferguson*, which sanctioned a separate-but-equal approach to public accommodations among others, the Oklahoma Territorial Legislature forbid racial integration in schools.[3] Shortly after

---

[2] *See* James M. Smallwood, *The Encyclopedia of Oklahoma History and Culture: Segregation,* Oklahoma Historical Society, https://www.okhistory.org/publications/enc/entry?entry=SE006 (last visited July 24, 2024).
[3] *Id.*

Oklahoma was admitted into the Union in 1907, the state's first "official" legislature wrote racial segregation into the law.[4]

During the 1940s, OU continued these segregative practices while failing to offer equal facilities for Black students as required by *Plessy*. In response to decisions from the Supreme Court clarifying that such policies that did not afford separate-but-equal accommodations were unconstitutional, *Sipuel v. Bd. of Regents of Univ. of Okla.*, 332 U.S. 631 (1948), Oklahoma revised its law to allow Black students to attend the state's university as long as it was "upon a segregated basis." *McLaurin v. Oklahoma State Regents for Higher Ed.*, 339 U.S. 637, 639 (1950). Under this amended law, George W. McLaurin, a Black man, was admitted to OU's Graduate School where he was the only Black student among 12,173 White students.[5] The school, however, remained functionally segregated, as Mr. McLaurin was forced to learn in a separate room overlooking the other students, and study and dine at different times and locations from his White peers. *McLaurin*, 339 U.S. at 640. OU only amended its segregation policy when it was held unconstitutional by the Supreme Court in 1950. *Id.* at 642.

The University continues to experience problems with race relations on campus even today. In March of 2015, the fraternity of Sigma Alpha Epsilon was investigated

---

[4] *Id.*
[5] Emma Keith, *Separate and Unequal*, OUDAILY (2024), https://projects.oudaily.com/mclaurin/; *Oklahoma University Told to Admit Negro; Regents Put Him on 'Segregated Basis'*, THE NEW YORK TIMES (October 12, 1948), https://www.nytimes.com/1948/10/12/archives/oklahoma-university-told-to-admit-negro-regents-put-him-on.html.

after a video of racist chants was leaked on the internet.[6] Students and community members gathered the next day to protest the actions of the fraternity.[7] Later, in January of 2019, a video circulated on campus of a former student in blackface and using a racial slur.[8] It was initially posted on Snapchat and disseminated via Twitter by a current student.[9] In March of 2019, members of OU's College Republicans reportedly condoned racist incidents and made racist jokes.[10] In September of 2019, there was another incident of a White student in blackface poking fun at the prior incident from January.[11] The issues became so serious that the Black Emergency Response Team ("BERT")—a student-run organization that was created in response to the racially hostile incidents—issued a statement to alert the community.[12] Even after, in 2020, two professors used a racial slur, with one comparing it to the "Okay, Boomer," phrase.[13]

---

[6] Paxson Haws, *Timeline: A look at racist incidents on OU's campus in the last five years*, OU DAILY (2024), https://www.oudaily.com/news/timeline-a-look-at-racist-incidents-on-ous-campus-in-the-past-five-years/article_b3e6522a-58db-11ea-a74b-c31c3e6ae337.html#:~:text=February%2024%2C%202020,reading%20from%20a%20historical%20document.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* "Okay, boomer," is a derogatory saying that young people say to older individuals, typically people from the baby boomer generation, when they want to say something mocking and dismissive. Nicole Spector, *'OK boomer' is dividing generations. What does it mean?* NBC NEWS (Nov. 6, 2019), https://www.nbcnews.com/better/lifestyle/ok-boomer-diving-generation-what-does-it-mean-ncna1077261.

OU attempted to respond to the hostile campus environment and BERT's request for a safer campus by creating "Gateway to Belonging," a mandatory diversity course for all new students. However, the state legislature passed H.B. 1775 in 2021 that, in part, targeted the course, leading OU to discontinue the mandatory nature of the course. Okla. Stat. tit. 70, § 24-157(A)(1).

In addition, OU has recently been embroiled in tense relations with students and faculty over its actions taken in response to an executive order issued by Governor Stitt, EO 2023-31.[14] This executive order ("EO") prohibits, among other things (though with many exceptions), state agencies from funding or requiring diversity, equity, and inclusion programs that grant preferential treatment based on race, color, ethnicity or national original. OU's actions included cancelling its NEW Leadership program, an initiative centered on encouraging and preparing women to run for office, despite the fact that EO 2023-31 does not apply to optional programs that focus on helping women. BERT noted that the blame falls both on OU, for not truly valuing diversity and going beyond what even the EO requires, and the governor, for issuing such an EO in the first place.[15]

---

[14] Executive Department Executive Order No. 2023-31, available at https://www.sos.ok.gov/documents/executive/2092.pdf.

[15] Amici issued a press release condemning OU's actions in response to the Governor's DEI EO. Cassidy Fallik, *ACLU of Oklahoma and Partners Respond to OU's Use of the Governor's Executive Order as a Guise to Eliminate DEI Programs Campuswide*, ACLU OKLAHOMA (June 4, 2024), https://www.acluok.org/en/press-releases/aclu-oklahoma-and-partners-respond-ous-use-governors-executive-order-guise-eliminate.

In addition to the problems facing Black students at OU, the State of Oklahoma passed a constitutional amendment in 2012 banning affirmative action in education, contracting, and employment, with limited exceptions. OKLA. CONST. art. 2, § 36A (amended 2012). As a result of the ban, the enrollment of students of color at OU's flagship Norman campus plummeted.[16] By 2019, enrollment of African American freshmen dropped from 5.1% to 3.7%.[17]

With very few numbers at OU, Black students must constantly advocate for themselves, create safe spaces, and work to fight against the rampant bigotry that pervades various aspects of life at OU. Plaintiffs' allegations pertaining to various Black-centered events have nothing to do with their claims of discrimination in financial aid or any unlawful discrimination. But Plaintiffs' use of these allegations to suggest that OU is treating its Black students better than other students demonstrates, at the very least, woeful ignorance of the true nature of race relations on OU's campus.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). *Iqbal* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those

---

[16] Brief for the President and Chancellors of the University of California as Amici Curiae Supporting Respondents, at 30, *SFFA v. Harvard*, 600 U.S. 181 (2023).
[17] *Id.*

allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). "Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice." *Id.* "[A] plaintiff must offer *specific factual allegations* to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (emphasis added).

Second, after disregarding conclusory statements, courts "look to the remaining factual allegations to see whether plaintiffs have stated a plausible claim." *Brooks*, 985 F.3d at 1281. "Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible." *Id*. This plausibility standard "refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## SUMMARY OF ARGUMENT

The Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs fail to sufficiently state a plausible claim for relief under Rule 12(b)(6). The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case. *Robbins*, 519 F.3d at 1248. In an equal protection claim, a plaintiff must include enough context and detail to link the allegedly adverse action to a discriminatory motive with something besides sheer speculation. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (noting that intentional discrimination claims under Title VII require a plaintiff to allege "some set of facts" that show differing treatment of similarly situated employees); *see also Iqbal*, 556 U.S. at 678.

Here, at best, Plaintiffs' complaint suggests broad allegations pertaining to a hypothetical disparate impact claim where Black students purportedly receive more financial aid than White students. The mere existence of a disparate impact, however, is not actionable under the Equal Protection Clause or Title VI. *See Alexander v. Sandoval*, 532 U.S. 275, 285-86 (2001); *Washington v. Davis*, 426 U.S. 229, 239 (1976). Intentional discrimination claims must be supported by either direct allegations of racial classifications, *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003), or significant circumstantial evidence demonstrating purposeful discrimination, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977); *see also Coal. for TJ v. Fairfax Cty. Sch. Bd.*, 68 F.4th 864, 879 (4th Cir. 2023) (noting that intentional discrimination may occur when racial classification exist, where a race-neutral policy is

applied starkly and unevenly based on race, or where a race-neutral policy results in a racially disparate impact and was motivated by discriminatory intent).[18] Plaintiffs allege neither. Having failed to provide enough context and detail in their allegations linking the allegedly adverse action to a discriminatory motive with something besides sheer speculation, Plaintiffs' Complaint should be dismissed.

## **ARGUMENT**

### I.     **Plaintiffs Fail to Sufficiently State a Plausible Claim of Racial Discrimination and Their Claims Should be Dismissed**

Plaintiffs fail to assert sufficient facts supporting viable equal protection and Title VI claims. To assert a racial discrimination equal protection claim, a plaintiff must demonstrate that racial classifications are unlawfully used or that facially neutral laws or policies have a disparate impact on a protected group and are motivated by a racially discriminatory purpose. Plaintiffs allege neither.

First, Plaintiffs' attempt to invoke strict scrutiny is improper because Plaintiffs have failed to plead any facts, much less sufficient facts, that OU uses racial classifications in making financial aid decisions. Under the Equal Protection Clause and Title VI, strict scrutiny analysis is only available when either racial classifications are afoot or intentional discrimination has been proven. *See Hunt v. Cromartie*, 526 U.S. 541,

---

[18]  In the rare case, intentional discrimination can be evidenced by the effects of an otherwise race neutral law alone, but those allegations must demonstrate stark differences between races for which no valid explanation could exist. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). There are no such allegations in Plaintiffs' Complaint, just a bare allegation that Black students on average receive "more" financial aid than non-Black students. Compl. ¶ 37.

546 (1999). Plaintiffs allege no such allegations. Second, Plaintiffs' claim fails because even under the proper test, the multi-factored approach described in *Arlington Heights* to determine whether a facially neutral policy is nonetheless motivated by discrimination, Plaintiffs have not adequately pled that the university's race neutral administration of financial aid is, in fact, motivated by a discriminatory purpose. Thus, the Court should dismiss Plaintiffs' lawsuit.

**A. Strict Scrutiny Does Not Apply Because Plaintiffs Do Not Sufficiently Allege Any Facts Supporting the Use of Racial Classifications by OU in Making Financial Aid Decisions**

Plaintiffs' Complaint is riddled with conclusory, irrelevant allegations, and what remains is threadbare allegations that fail to reach the plausibility standard. "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (internal quotation omitted). Once a plaintiff shows discriminatory intent and an adverse effect, a court reviews the government action under the appropriate level of scrutiny. *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). Plaintiffs, relying extensively on the Supreme Court's decision *Students for Fair Admissions, Inc. v. Harvard College and University of North Carolina, see, e.g.,* Compl. ¶¶ 1, 19, 22, 25, 72, 73, 82, 83, assert that strict scrutiny applies in this instant action because OU, like Harvard and UNC, considers race as a factor in making its financial aid decisions, similar to Harvard and UNC's use of race in making admissions decisions. *See Students for Fair Admissions, Inc. v. President &*

*Fellows of Harv. Coll.*, 600 U.S. 181, 213 (2023) ("*SFFA v. Harvard*"). Here, however, Plaintiffs do not allege any specific facts identifying any policy of OU where the race of applicants for financial aid is unlawfully used in decision-making. Thus, strict scrutiny does not apply.

Plaintiffs attempt to obfuscate this key omission from their allegations by describing other unrelated areas where OU is aware of race. Plaintiffs assert, for example, that "[t]he University of Oklahoma continues to engage in racially discriminatory activities after students are admitted. For example, the University hosts race-based programming and activities sponsored by the Office of African American Programs & Services." Compl. ¶ 31. However, none of these facts allege, much less support an inference, that OU demonstrates a racial preference towards Black students in financial aid. Those allegations are therefore irrelevant for the claims at issue. Moreover, nothing in *SFFA v. Harvard* suggests that such support of student affinity groups and similar programming is unlawful. Building healthy, safe climates for students is wholly consistent with the Equal Protection Clause.

Plaintiffs also allege that the University of Oklahoma's potential awareness of race based on an option to note race when applying for financial aid is somehow unlawful. *See, e.g.*, Compl. ¶¶ 36, 45. This is false. The awareness of race is not the same as using race to make decisions and does not amount to any differing treatment standing alone. *See SFFA*, 600 U.S. at 230-31 (noting that universities can assess an applicant's mention of race in essay questions and other parts of an application so long as the applicant is

"treated based on his or her experiences as an individual—not on the basis of race."); *see also Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1260 (10th Cir. 2008) (stating that discriminatory intent requires "the intent to treat differently."). In *Feeney*, the Supreme Court explained that a "'discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). In fact, the majority opinion in *SFFA* acknowledges that universities can consider racial experiences as part of their admissions programs, such as "an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise." *SFFA*, 600 U.S. at 230. It is axiomatic that if applicants can discuss their racial experiences in their applications, then college officials will be aware of applicants' race. In order to be unlawful, Plaintiffs must specifically allege that these college officials are *using* that knowledge unlawfully to discriminate against students based on their race; Plaintiffs have made no such allegations here.

Indeed, both Justice Thomas and Justice Kavanaugh acknowledged in their concurring opinions in *SFFA* that awareness of racial diversity and the pursuit of the benefits of diversity through race-neutral policies remains lawful. *SFFA*, 600 U.S. at 284 ("Race-neutral policies may thus achieve the same benefits of racial harmony and equality without any of the burdens and strife generated by affirmative action policies.") (Thomas, J., concurring); *id.* at 317 (Kavanaugh, J., concurring) ("Governments and

universities still can, of course, act to undo the effect of past discrimination in many permissible ways that do not involve classification by race." (internal quotation omitted)).[19]

Furthermore, the Complaint lacks any context or details to support allegations that students applying for financial aid are similarly situated, yet treated differently. Plaintiffs do not describe how they applied for financial aid nor how Black students applied, whether they applied for the same scholarships and financial aid, or even whether they had the same qualifications. They mention that students are considered for financial aid when they apply for admissions, but none of the Plaintiffs offer any specific details showing how they were treated differently. Nothing in the Complaint provides context or details about how OU reviews financial aid applications. The conclusory allegation that each Plaintiff would have received additional financial aid but for racial discrimination is highly speculative, at best. Nothing in the Complaint supports an inference that these Plaintiffs were situated similarly to Black students but nonetheless denied financial opportunities based on unlawful racial classifications. Plaintiffs' allegations that Black students receive more money than Plaintiffs and other non-Black students, a claim that

---

[19] *See also Coal. for TJ*, 68 F.4th 864 at 891(T. Heytens, J. concurring) ("The Supreme Court has repeatedly blessed seeking to increase racial diversity in government programs through race-neutral means . . . Having spent decades telling school officials they must consider race-neutral methods for ensuring a diverse student body before turning to race-conscious ones, it would be quite the judicial bait-and-switch to say such race-neutral efforts are also presumptively unconstitutional.").

itself is speculative at best, is not enough to adequately allege a facially discriminatory policy warranting strict scrutiny analysis.

### B. Plaintiffs Have Failed to Sufficiently Allege Facts Supporting Intentional Discrimination under *Arlington Heights*

Even when applying the proper test to Plaintiffs' allegations, Plaintiffs have still failed to adequately state a claim for relief. When a policy is neutral on its face, as is the case here, courts look to the factors enumerated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, to determine whether a discriminatory purpose played a "motivating factor" in the law's enactment. 429 U.S. 252, 265–68 (1977); *see also Navajo Nation v. State of N.M.*, 975 F.2d 741, 743–44 (10th Cir. 1992). These non-exhaustive factors include (i) the disparate impact on the protected class, (ii) the historical background of the decision and sequence of events leading up to the decision, (iii) the relevant legislative or administrative history, and (iv) procedural and substantive departures. *See Navajo Nation*, 975 F.2d at 743–44. Under this test, the plaintiff bears the burden of establishing "'the existence of purposeful discrimination' causing an adverse effect" in order to allege that they have a valid claim. *Ashaheed v. Currington,* 7 F.4th 1236, 1250 (10th Cir. 2021) (internal quotation omitted). Therefore, to avoid dismissal, Plaintiffs must establish that OU "intentionally discriminates between groups of persons" when awarding financial aid and scholarship money. *See SECSYS v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). They have failed to do so here.

Even during the pleading stage, it does not suffice to simply plead facts that if true would create a "possibility" of intentional discrimination, or "that are 'merely consistent

with'" intentional discrimination. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant" has discriminated intentionally. *Id*. Plaintiffs' Complaint is bereft of any specific, non-conclusory allegations supporting these factors.

For example, to establish disparate impact*,* a plaintiff must allege sufficient facts showing that the challenged policy "bears more heavily on one race than another." *Arlington Heights*, 429 U.S. at 266 (internal quotation omitted). The rhetoric in the Complaint is full of broad-sweeping, conclusory accusations describing a nefarious intent to discriminate against White students, but it is void of sufficient allegations supporting Plaintiffs' claim that OU's financial aid program disparately impacts White and non-Black students. For example, they baldly proclaim "the University of Oklahoma determines how much financial aid it gives to students based on their race," (Compl. ¶ 2), but there are no supporting allegations. *See Iqbal,* 556 U.S. at 678 (holding that the Court is not obligated to accept as true legal conclusions presented as factual allegations); *Kansas Penn Gaming, LLC v. Collins,* 656 F. 3d 1210, 1214 (10th Cir. 2011).

In the lone instance where Plaintiffs mention a "statistical analysis of publicly available data" from 2009 to 2022, they include none of the specific results of that data showing any impact, much less a disparate impact, of Defendants' financial aid program on White students compared to Black students, nor do they specify what financial aid policies were in place during that time period. *See* Compl. ¶ 37. It is also worth noting that these years of focus, from 2009 to 2022, not only likely predate the admission of

Plaintiffs at OU as asserted by Defendants and are therefore inconsequential, Dkt. 20 at

13, but those years also predate the Supreme Court's decision in *SFFA v. Harvard*. The

release of that decision in 2023, which applied only to admissions, means that even if OU

had engaged in racial preferences between the years of 2009 and 2022, such would likely

have been lawful under Title VI and Equal Protection precedent applicable at that time.

*See, e.g., Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 376 (2016) (affirming

constitutionality of UT-Austin's race-conscious admissions program). Plaintiffs' failure

to assert any specific allegations pertaining to the disparities in financial aid between

Black students and White students for any relevant years dooms its claims. *See generally*

*Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) ("[I]n the context of a § 1983

claim, [c]onclusory allegations are not sufficient to state a constitutional violation."

(internal quotation omitted). "A plaintiff who fails to allege facts at the pleading stage or

produce statistical evidence demonstrating a causal connection cannot make out a prima

facie case of disparate impact." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys.*

*Project, Inc.*, 576 U.S. 519, 543 (2015).

Furthermore, there are almost no allegations supporting any of the other *Arlington*

*Heights* factors. In their Complaint, Plaintiffs provide no allegations of the background of

the historical events leading up to "the decision" complained of as *Arlington Heights*

demands. *See Navajo Nation*, 975 F.2d at 743–44. "The historical background of the

decision is one evidentiary source" of the purposes for which a law is enacted because it

can reveal "a series of official actions taken for invidious purposes." *Arlington Heights*,

429 U.S. at 267. In addition, the Complaint provides no history of how the University of Oklahoma might have arrived at the purported racial disparity in financial aid awards. Plaintiffs provide examples of several legally permissible and inclusive events, like "Welcome Black Weekend," without confirming whether the events are, in fact, racially exclusionary or not open to White students, in particular. More importantly, these examples say nothing about the financial aid process at OU. Additionally, Plaintiffs present no allegations of the relevant legislative and administrative history. Lastly, Plaintiffs do not account for any procedural or substantive departures that might support a theory of discrimination under the *Arlington Heights* framework. "Departures from the normal procedural sequence" or "[s]ubstantive departures" from "the factors usually considered important by the decisionmaker" might afford "evidence that improper purposes are playing a role." *Arlington Heights*, 429 U.S. at 267.

Plaintiffs' lone, unsubstantiated additional allegation is that an unnamed official from the OU Office of Admissions purportedly told Plaintiff Savage "that financial aid was generally not available to students like her, but would have been if she were African American." Complaint ¶ 54. Without more information on this official, such as their role in making financial aid awards, their involvement in creating policies, or knowledge of all financial aid decisions at OU, this allegation does little to support Plaintiffs' Equal Protection Claim. *See Iqbal,* 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007))). Conceivability is not enough to rise to the level of plausibility. *See Khalik*, 671 F.3d at 1190. Put differently, a plaintiff "must include enough facts to 'nudge their claims across the finish line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.,* 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Twombly,* 550 U.S. at 570) (internal alteration omitted). Although detailed factual allegations are not required, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

If all that is required to overcome a motion to dismiss on serious Equal Protection and Title VI claims is an allegation that students of a certain race receive more financial aid (though the specific amount is unknown) on average than students of another race during inconsequential years alongside an extraneous statement by an unknown employee, hundreds of lawsuits could easily flood the courts across the country. This, Rule 12(b)(6) does not allow, and Plaintiffs' lawsuit must be dismissed.

## **CONCLUSION**

For the reasons stated above, Amici respectfully urge the Court to grant Defendants' Motion to Dismiss.

Respectfully submitted,

By:  */s/ Megan Lambert*
Megan Lambert, OK Bar No. 33216
Adam Hines, OK Bar No. 35640
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
OKLAHOMA
PO Box 13327
Oklahoma City, OK 73113
Tel: (405) 524-8511
mlambert@acluok.org
ahines@acluok.org

*Attorneys for Amici Curiae*
*Lawyers' Committee for Civil Rights*
*Under Law and ACLU of Oklahoma*

Dated:    July 25, 2024


Chavis Jones, *pro hac vice pending*
Maya Brodziak, *pro hac vice pending*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC  20005
Tel: (202) 662-8307
cjones@lawyerscommittee.org
mbrodziak@lawyerscommittee.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2024, I electronically filed the foregoing Brief of Civil Rights Amici Curiae ACLU OK and Lawyers' Committee for Civil Rights Under Law via the Court's CM/ECF system, which effects service upon all counsel of record.

        */s/ Megan Lambert*

Megan Lambert
OK Bar No. 33216
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF OKLAHOMA
P.O. Box. 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org