IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRAYDEN JOHNSON, LOGAN RHINES, and KAYLA SAVAGE, individually, and on behalf of all others similarly situated,<br><br>            *Plaintiffs*,<br><br>v.<br><br>THE UNIVERSITY OF OKLAHOMA, ET AL.<br><br>            *Defendants*. | Case No. 5:24-cv-00495-PRW |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendants the University of Oklahoma, Joseph Harroz, Jr., Jeff Blahnik, Courtney Henderson, and Dorion Billups (collectively, "the University") submit this reply brief in support of their Motion to Dismiss the First Amended Complaint ("FAC") [Doc. 49] under Rule 12(b)(6) and Rule 12(b)(1).

## INTRODUCTION

After two complaints and an opposition brief, the most important facts are still missing. To state an equal protection claim, Plaintiffs must allege *facts* supporting that the University discriminated against *them*—Johnson, Rhines, and Savage—when awarding financial aid *because* they are White. Yet Plaintiffs fail to identify the scholarships or other forms of financial aid for which they applied. Nor do they identify the scholarships they were allegedly denied because of their race. They also do not identify which forms of financial aid produced an alleged statistical disparity in the net cost of attendance between racial groups such that the Court can infer systematic racial discrimination.

Instead, Plaintiffs gloss over specifics by claiming they applied for "general" financial aid. But there is no such thing as "general" financial aid. "Financial aid" refers to many types of scholarships, grants, and other awards, which have their own criteria, and many of which are controlled by outside actors, not the University. Plaintiffs fail to acknowledge that not all students compete for all forms of financial aid, because some forms of financial aid are, by their nature, restricted (e.g., federal Pell Grants for the economically disadvantaged, merit scholarships for those with certain minimum academic credentials, athletic scholarships for athletes, and so on). Because financial aid is not monolithic, Plaintiffs cannot state a plausible claim with sweeping assertions. Yet Plaintiffs have failed to provide the details necessary to make their claims plausible.

For all that, the missing information is within Plaintiffs' possession. They know what scholarships and other forms of financial aid they applied for—but they won't say. They know the specific results of the statistical "analysis" and the size of the alleged race-based disparity it supposedly shows. But they will not disclose that either. Supreme Court precedent demands enough *facts* to make a claim plausible. And the First Amended Complaint does not have them.

1

## ARGUMENT

**I.     The FAC fails to plausibly allege that the University intentionally discriminated against Plaintiffs in awarding financial aid.**

The Court must accept "well-pleaded facts as true." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). But just as important is the fundamental principle that the Court must first "disregard conclusory statements." *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1233 (10th Cir. 2022). Plaintiffs' repeated assertion that the University considers race when awarding "financial aid" is a conclusory statement—not a fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At its core, Plaintiffs fail to plead *actual* facts supporting that the University discriminated against them because of their race and thus fail to state viable claims.

**A.     Plaintiffs fail to plausibly allege that the University treated them differently than similarly situated students.**

The Equal Protection Clause prohibits "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Plaintiffs must therefore "make a threshold showing that they were treated differently" from students who are "similarly situated" to them. *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018). Plaintiffs cannot rely on the oversimplification that they are similarly situated to "all others seeking aid from the University of Oklahoma." Opp. at 24. They are similarly situated only to students who applied for the same types of financial aid at the same time—students who "are alike 'in all relevant respects.'" *Requena*, 893 F.3d at 1210 (citation omitted).

Yet after two complaints and a preview of the University's arguments, Plaintiffs still have not identified which scholarships or other forms of financial aid they applied for and when, as well as which scholarships or other forms of financial they were denied

2

because of their race. Demanding these basic facts to state a plausible claim is not a "crabbed" take on equal-protection pleadings. Opp. at 24. These omissions are much like a plaintiff alleging she was discriminated against in hiring without even identifying the job she applied for. *See, e.g.*, *Wheeler v. IHC Health Servs.*, 2023 WL 3391531, at *4 (D. Utah 2023) (finding plaintiff failed to state a claim for discriminatory hiring when "the complaint fail[ed] to identify what position Mr. Wheeler applied for"); *Gonzalez v. Conn. Dep't of Corrs.*, 2021 WL 1923785, at *15 (D. Conn. 2021) (same).

At most, Plaintiffs summarize the FAC as alleging that "[e]ach Plaintiff applied for the University's general 'financial aid' and 'scholarship' offerings, and each received less aid because of his or her race." Opp. at 17. Setting aside the fact that there is no such thing as "general" financial aid, "it is insufficient for a plaintiff to allege . . . that she did not receive a[] benefit that 'similarly situated' [people] received." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019). That is "just a legal conclusion—and a legal conclusion is never enough." *Id.* Rather, Plaintiffs need—but do not have—"some set of *facts*—not just legal conclusions—that taken together plausibly suggest differential treatment of similarly situated" students. *Id.* (emphasis added).

Plaintiffs' statistical analysis does not save the day. To begin, the Court need not run Plaintiffs' analysis through *Daubert* to discount it on a motion to dismiss. *See* Opp. at 22. Like any factual allegation, the Court need only ask whether the statistics "give rise to a plausible inference" of discrimination. *Iqbal*, 556 U.S. at 682. Here, they do not.

First, although Plaintiffs alleged the results are "statistically significant," Opp. at 22, statistical significance "does not necessarily mean that the departure from equality was large." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1201 (10th Cir. 2006). As the Tenth Circuit has explained, "[i]t is not enough for a plaintiff to present data showing a disparity

3

between groups. To be reliable, the result *also* must be statistically significant." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1223 (10th Cir. 2013) (emphasis added). In other words, to be plausible, the results must (1) reflect an actual, material disparity; and (2) be statistically significant. Yet Plaintiffs skip to the second step without "present[ing] data showing a disparity between groups." *Id.*; *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 671 (2021) ("The size of any disparity matters."); *id.* at 704 n.4 (Kagan, J., dissenting) ("I agree with the majority that 'very small differences' among racial groups do not matter."). In short, Plaintiffs have failed to plead that there is any material disparity, irrespective of whether that disparity is statistically significant.

Plaintiffs try to clarify that the "institutional financial aid grants" used in the statistical analysis are just University "scholarships." *Compare* FAC ¶ 42 n.14, *with* Opp. at 18. But this raises more questions than answers. For one, the FAC does not define the ambiguous phrase "institutional financial aid grants," and Plaintiffs cannot amend their complaint in an opposition brief. *See Scott v. Hormel*, 2019 WL 3935101, at *2 n.2 (W.D. Okla. 2019). This clarification also contradicts Plaintiffs' allegations as pleaded. The FAC alleges that the "institutional grant aid" that was subtracted from the net cost of attendance is but one of the unspecified "discounts"—plural—used. FAC ¶ 42 n.14.

More to the point, Plaintiffs' attempted clarification raises the question: Which University scholarships were included in the data? The University awards millions of dollars in scholarships every year based on different eligibility criteria, including merit and need. If merit scholarships were included in the analysis, then controlling for family financial resources would only skew the data. FAC ¶¶ 42, 44. On the other hand, if the only "discount[]" considered was need-based scholarships awarded using *University* criteria, *see id.* ¶ 42 n.14, the measure of enrolled students receiving *federal* grant aid is an even

4

poorer proxy than the University first explained. *See* Mot. to Dismiss at 14–15. Indeed, Plaintiffs do not allege that "a student's eligibility for [*federal aid*]" is relevant to the *University's* need-based criteria. Opp. at 22 (citing handbook for Pell Grant eligibility); FAC ¶ 44.

Nor do Plaintiffs explain how they isolated University-awarded scholarships in determining a student's net cost of attendance. As an example, assume a student's federal financial aid covered ninety-two percent of the cost of attendance, and the University awarded a scholarship covering the rest. If this external aid was excluded from the analysis—as Plaintiffs now appear to assert in their brief—the data would give the false impression that the University scholarship reduced the student's cost of attendance by only eight percent—much less than the University would have awarded the student had the student received less federal financial aid. On the flip side, if the net cost of attendance *does* reflect other types of financial aid, we're back to square one—the University administers financial aid based on federal and state need-based formulas or third-party criteria beyond the University's control, so any disparity in the data cannot reflect *University* discrimination.

The root of these persistent problems in the analysis is Plaintiffs' incorrect treatment of financial aid as monolithic. Financial aid is a multi-faceted, complex system that cannot be distilled into one column on a spreadsheet. Yet Plaintiffs fail to provide the information needed to make heads or tails of what type of financial aid is supposedly at issue—both in their individual circumstances and in "the financial-aid data that the University reported to the Department of Education." FAC ¶ 40. At bottom, Plaintiffs seek an "inference without underlying facts"—a textbook conclusory allegation. *Brooks*, 985 F.3d at 1281.

Plaintiffs also confirm that the data does not overlap with their enrollment. *See* Opp.

at 18, 24. Because Plaintiffs were not competing against the students in the dataset for financial aid, they are not similarly situated to them. Plaintiffs argue that the data is "quite probative" because the "period immediately precedes Plaintiffs' enrollment." Opp. at 24. But that is not true. The data covers *twenty years* going back to 2002, so most of it does *not* immediately precede Plaintiffs' enrollment in Fall 2022. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1148 (10th Cir. 2009) ("[In order for] statistics to be probative of discrimination, they must relate to the proper population."). The statistical analysis thus does not show that Plaintiffs were treated differently from others who were similarly situated.

      **B.    Plaintiffs fail to plausibly allege that the University engaged in intentional discrimination.**

Plaintiffs also fail to allege that the University acted with purposeful discrimination. Plaintiffs concede that their case is "not premised on one-off discrimination in a particular sub-program." Opp. at 10. Rather, they argue their case is "premised on 'systematic racial discrimination' in the University's financial aid program." *Id.* Yet purposeful discrimination requires alleging that "the decisionmakers in [the plaintiff's] case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). High-level allegations about institutionalized discrimination do not state an equal protection claim. *See, e.g.*, *Walker v. Scott*, 123 F. Supp. 2d 1034, 1045 (E.D. Tex. 2000) (rejecting the "general argument that systematic racial discrimination plagues the Texas death penalty" because plaintiff failed to show on summary judgment that the "decisionmakers" in *his* case "acted with discriminatory intent"). The allegations Plaintiffs rely on to paint the University's entire financial aid system as plagued with racial discrimination against White students thus do not plausibly allege that the University discriminated against Plaintiffs "in a particular sub-program." Opp. at 10.

Next, Plaintiffs' assertion that this is the "rare case" in which direct evidence of discriminatory intent exists is an overstatement. Opp. at 16. The "most incriminating" evidence Plaintiffs identify is a comment from "[a]n official from the University of Oklahoma's Office of Admissions" who allegedly told "Savage that financial aid was generally not available to students like her—but would have been if she were African American." FAC ¶ 65; *see* Opp. at 1. From this stray undated comment by an unnamed, untitled University employee working in an office that does not award financial aid, Plaintiffs ask the Court to infer that every White student has been generally *ineligible* for financial aid for an unspecified number of years, *see* FAC ¶ 67—what Plaintiffs call "systematic racial discrimination." *Id.* ¶ 46. Such an inference is not reasonable, and the allegation—"lack[ing] any factual enhancement"—enjoys no presumption of truth. *Frey*, 41 F.4th at 1233. Moreover, it is contradicted by the fact that Plaintiffs' Johnson and Rhines—both White—each received thousands of dollars in financial aid from the University. FAC ¶¶ 53, 58.

Besides, even if it were presumed true, it is not "direct evidence" of discrimination against *Savage* much less evidence of some official University policy. Opp. at 16. Plaintiffs clarify that Savage applied for aid *after* she was allegedly told by someone that financial aid is "*generally* not available to students like her." FAC ¶ 65 (emphasis added); Opp. at 17. There are no facts to suggest that this stray comment—or this employee—had any connection to a different University office's later decision to deny Savage aid. In the Tenth Circuit, "anecdotal evidence of discrimination" is only relevant if "the prior incidences of alleged discrimination can somehow be tied to the" adverse action. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 885 (10th Cir. 2018) (citation omitted); *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (instructing that "stray racial

7

comments" are not relevant "unless the plaintiff can link them to [the adverse action] or the individuals making those decisions"). With no facts connecting this stray comment to the University's later decision to deny Savage aid, the comment amounts only to this mysterious University employee's "personal opinion, not an existing company policy, and therefore it does not constitute direct evidence of discrimination." *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136–37 (10th Cir. 2000).[1]

Plaintiffs' other circumstantial evidence does not help them plausibly allege "an invidious discriminatory purpose." *Washington v. Davis*, 426 U.S. 229, 242 (1976). To be fair, discriminatory purpose "may often be inferred from the totality of the relevant facts." *Id.* Plaintiffs' other facts are not, however, "legally relevant." *Bekkem*, 915 F.3d at 1275. Take Plaintiff's statistical analysis. The alleged uncovered disparate impact is not a "starting point" because Plaintiffs plead no facts connecting the data used to their individual circumstances. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see supra* at 3–5; Mot. to Dismiss at 9–15.

The University's alleged "race-based goals," "practices," and "programs," *see* Opp. at 18–20, similarly fail to "nudge[] their claims across the line from conceivable to plausible."[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 570 (2007). To begin, this evidence has nothing to do with financial aid. *See* FAC ¶¶ 27–32. Plaintiffs recognize as much, settling for the argument that this evidence makes it "more likely" that the University discriminates in awarding financial aid and "enhances the plausibility" of this allegation. Opp. at 19–20. The Court need not make such an inferential leap. But even if such

---

[1] Whatever it means for Savage, this alleged comment cannot show that the University intentionally discriminated against Johnson and Rhines.

[2] Circumstantial evidence does not include any old "'historical background' facts." Opp. at 18 (quoting *Arlington Heights*, 429 U.S. at 267). The "historical background of *the decision* is [the relevant] evidentiary source." *Arlington Heights*, 429 U.S. at 267 (emphasis added).

8

allegations had minimal relevance to the University's general financial aid practices, they do not allow the Court to infer that "the decisionmakers in [*Plaintiffs'*] case[s] acted with discriminatory purpose"—the linchpin of an equal protection claim. *McCleskey*, 481 U.S. at 292.[3]

## II.   Plaintiffs lack Article III standing to bring their claims.

Finally, Plaintiffs miss the crux of the University's standing argument. Of course, the denial of equal treatment as a *theory* is recognized as a concrete injury-in-fact under Article III. *See* Opp. at 9. But that premise does not help Plaintiffs "adequately allege a plausible claim of injury" to them. *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1220–21 (10th Cir. 2016); *see Iqbal*, 556 U.S. at 678. Plaintiffs need to plausibly allege— with "some set of facts," *Bekkem*, 915 F.3d at 1275—that the University's alleged racial preferences in awarding financial aid affected *them* "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Merely stating the phrase "systematic racial discrimination" is not enough. FAC ¶ 46; *see Lane v. Lane*, 646 F. App'x 646, 649 (10th Cir. 2016) ("Conclusory statements are not sufficient to demonstrate an injury to support standing."). And misconceptualizing "financial aid" as a monolith when the term collectively refers to different forms of aid, with varying eligibility criteria, is not enough either. When a plaintiff claims that they have received unequal treatment in competing for some benefit, the plaintiff must allege that they applied for, and competed for, that benefit. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972).

*Northeastern Florida Chapter of Associated General Contractors v. City of Jacksonville*, 508 U.S. 656 (1993) is not to the contrary. There, contractors challenged a

---

[3] As the University previously noted, a school can express goals to achieve a diverse student body consistent with *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023). *See* Mot. to Dismiss at 16 n.8.

city program that set aside 10 percent of municipal contracts to be awarded to minority-owned businesses. *Id.* at 658. The Supreme Court held that the plaintiffs had standing because they *sought to compete* for the *specific* contracts that were the subject of the set-aside. *Id.* at 666; *see also Concrete Works of Colo., Inc. v. City and Cnty. of Denver*, 36 F.3d 1513, 1519 (10th Cir. 1994) (finding contractor had standing because it "submitted bids on three projects the Ordinance prevented it from competing on an equal basis with minority . . . contractors").

Here, by contrast, Plaintiffs have failed to specify what forms of financial aid (scholarships or otherwise) for which they were competing, let alone which ones were awarded using an alleged racial preference. This would be the same as if the contractors in *City of Jacksonville* had alleged generally that the City discriminated in awarding contracts but then failed to plead any facts about the set-aside program, the specific contracts it covered, and the fact that the contractors sought to compete for those very contracts.

## CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' FAC and grant any other relief that the Court considers appropriate.

Date: September 16, 2024

Respectfully submitted,

Armand Paliotta, OBA #15320
**UNIVERSITY OF OKLAHOMA**
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
apaliotta@ou.edu

*University General Counsel*

/s/ *Michael Burrage*
Michael Burrage, OBA No. 1350
Patricia A. Sawyer, OBA No. 30712
**WHITTEN BURRAGE LAW FIRM**
512 North Broadway Avenue, Ste 300
Oklahoma City, OK 73102
Telephone (405) 516-7800
Facsimile (405) 516-7859
mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com

Hayley E. Hanson, *admitted PHV*
Derek Teeter, *admitted PHV*
Michael T. Raupp, *admitted PHV*
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
T (816) 983-8000
F (816) 983-8080
hayley.hanson@huschblackwell.com
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

Daniel G. Solomon, *admitted PHV*
**HUSCH BLACKWELL LLP**
1801 Penn. Ave, NW, Suite 1000
Washington, DC 20006
T (202) 378-2300
danny.solomon@huschblackwell.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 16, 2024, I filed a copy of the foregoing with the Court using the ECF system, which sent electronic notification to all counsel of record.

/s/ *Michael Burrage*
Michael Burrage, OBA No. 1350
*Attorney for Defendants*